UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| NIKOLAI RADOMILE, | CASE NO. 5:23-CV-343-KKC-MAS |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| PINNACLE TREATMENT CENTERS, KY-I LLC, d/b/a RECOVERY WORKS GEORGETOWN; AMY OLSEN; SUSIE GREENWELL; and LISA PINKERTON, | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Pinnacle Treatment Centers, KY-I, LLC's ("Pinnacle") Motion for Summary Judgment (DE 24) and Motion to Strike. (DE 28.) Now that these motions are fully briefed, they are ripe for review.

I. **Background**

Nikolai Radomile ("Radomile") was employed by Pinnacle at its Georgetown, Kentucky facility prior to his termination. Upon the receipt of grievances and reports of policy infractions, Lesa Pinkerton, a Human Resources Talent Business Partner with Pinnacle, conducted an investigation into Radomile's alleged inappropriate conduct. She ultimately submitted a recommendation to senior leadership that Radomile be terminated. This termination was later approved by Peggy Gemperline and Patty Dowling-Thompson, members of Pinnacle's corporate senior leadership team.

During his time employed at Pinnacle, Radomile possessed a firearm and stored it in his personal vehicle. He states that he did so pursuant to KRS § 527.020, which states in relevant part:

1

> A loaded or unloaded firearm or other deadly weapon shall not be deemed concealed on or about the person if it is located in any enclosed container, compartment, or storage space installed as original equipment in a motor vehicle by its manufacturer, including but not limited to a glove compartment, center console, or seat pocket, regardless of whether said enclosed container, storage space, or compartment is locked, unlocked, or does not have a locking mechanism. No person or organization, public or private, shall prohibit a person from keeping a loaded or unloaded firearm or ammunition, or both, or other deadly weapon in a vehicle in accordance with the provisions of this subsection. Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate relief or for damages in a Circuit Court or District Court of competent jurisdiction.

Radomile alleges that Pinnacle terminated his employment as a direct result of his lawful possession of a firearm. (DE 1-1 at 7.) He further argues that his termination constitutes a wrongful discharge in violation of KRS § 537.020(8). (*Id.*)

Radomile also brought claims against Amy Olsen, Susie Greenwell and Lisa Pinkerton, who he asserted were "agent[s] and/or employee[s] of Defendant Pinnacle." (*Id.* at 6.) He alleged that his wrongful discharge caused emotional harm and brought the following claims as Counts II-VI: (1) negligent infliction of emotional distress; (2) intentional infliction of emotional distress; (3) negligence; (4) causation; and (5) punitive damages. (*Id.* at 7–9.) However, the Court ruled in its June 17, 2024 Opinion and Order (DE 14) that these individual defendants were fraudulently joined and that the wrongful discharge claim against Pinnacle was the sole remaining claim in this action.

Following the end of discovery, Pinnacle filed its Motion for Summary Judgment. (DE 24.) It asserts that Radomile violated multiple Pinnacle policies—laid out in Pinnacle's Teammate Handbook and Code of Conduct—during his employment, and that Radomile has not produced evidence showing that he was terminated because he kept a firearm in his vehicle. (DE 24-2 at 8–9.) Pinnacle then moved to strike Radomile's Response to the Motion for Summary Judgment, arguing that it was untimely. (DE 28.) The motions have otherwise

been fully briefed. Accordingly, the Court will resolve Pinnacle's Motion to Strike before turning its discussion to the Motion for Summary Judgment.

## II.    Analysis

### A.    Motion to Strike

Pinnacle filed its Motion for Summary Judgment on March 10, 2025. (DE 24.) Radomile filed his Response on April 1, 2025. (DE 26.) Citing Local Rule 7.1(c), Pinnacle asserts that Radomile's Response is untimely because he was required to file his Response within 21-days days of the filing of its Motion for Summary Judgment. (DE 28 at 1.) Accordingly, it states that the proper deadline to file a response was March 31, 2025.

Radomile argues that Pinnacle's deadline of March 31, 2025 is incorrect and that the correct deadline to file a response was April 1, 2025. (DE 30 at 1.) In support of this position, Radomile cites Federal Rule of Civil Procedure 6(a)(1)(A), which states that "the day of the triggering event that triggers the [response] period" is excluded. (*Id.* at 2.)

The correct deadline to file a response to Pinnacle's Motion for Summary Judgment was March 31, 2025. While the rules do require that the day the relevant motion was filed be excluded from the calculation, it is indisputable that twenty-one days thereafter is March 31, 2025. However, "the federal courts have a strong preference" to make rulings on the merits. *Clark v. Johnston*, 413 F. App'x 804, 819 (6th Cir. 2011); *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (noting the "strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits"); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986). Because there is no danger of prejudice to Pinnacle and Radomile filed its Response only one day after the deadline, the Court will decline to grant Pinnacle's request to strike Radomile's Response.

### B.    Motion for Summary Judgment

Pinnacle argues it is entitled to summary judgment because Radomile cannot show that he was terminated because he kept a legal firearm in his personal vehicle. (DE 24-2 at 7.) It emphasizes, instead, that it has produced "ample evidence" that Radomile was terminated due to his admitted violations of Pinnacle's policies. (*Id.* at 8.) These violations included: (1) failing to attend mandatory nursing meetings; (2) making mistakes with respect to a prescription; (3) sexually harassing a coworker; and (4) making threatening statements to and about coworkers. (*Id.*) Rather than possessing a firearm in his personal vehicle, Pinnacle asserts that the record demonstrates that Radomile's employment was terminated because of his "admitted repeated and severe breaches of Pinnacle's Teammate Handbook and Code of Conduct." (*Id.* at 9.)

In response, Radomile primarily focuses on a voicemail sent to him by the then-Executive Director of the Georgetown, Kentucky Pinnacle facility, Amy Olson. (DE 26 at 4.) He asserts that in this voicemail, Olson claimed that his possession of a firearm was the main reason that he was being terminated. (DE 26-7 at 1.) He also points out that Pinkerton signed a Corrective Action Form that listed having a gun in his vehicle as one of the allegations giving rise to the investigation. (DE 26 at 4.) He argues that a reasonable jury could find in his favor if presented with this evidence, and that summary judgment is inappropriate. (*Id.*)

A district court will grant summary judgment when the moving party shows there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party carries this burden, the burden of production shifts to the nonmoving party to "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322.

At the summary judgment stage, the Court does not weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Further, the Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir. 1987). Rather, this Court determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52.

Radomile attempts to argue that "[t]he essential dispute in this matter is whether a jury would believe Amy Olson or Lesa Pinkerton[,]" but the record contradicts that claim. (DE 26 at 4.) It is not a matter of believability. Such a simplification would ignore the evidence produced by Pinnacle demonstrating that: (1) Olson was not involved in the investigation of the complaints against Radomile; (2) Olson lacked the authority to terminate Radomile; (3) Olson was not a part of the decision to terminate Radomile; and (4) Pinkerton did not inform Olson that the main reason for Radomile's termination was his possession of a firearm in his personal vehicle. (DE 24-5 at 4–6.) While there is insufficient evidence explaining why Olson made that phone call to Radomile, there is ample evidence that Olson played no part in the actual investigation of his conduct and subsequent termination.

Radomile's Response, notably, does not address any of the above evidence that was emphasized in Pinnacle's Motion for Summary Judgment. Instead, he simply focuses on the voicemail itself, ignoring the person behind it and her role in the investigation. This strikes against what the Sixth Circuit has previously explained—that "[u]nless the statements or conduct of nondecisionmakers can be imputed to the ultimate decisionmaker, such statements or conduct can not suffice to satisfy the plaintiff's burden of demonstrating animus." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 724 (6th Cir. 2004) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (internal quotations marks and citations

omitted). Radomile has not produced any evidence suggesting that Olson's statements had affected Peggy Gemperline and Patty Dowling-Thompson's decision to approve and finalize the termination of his employment.

Further, Radomile has not produced any evidence that Pinnacle employees have ever been disciplined or terminated for possessing a firearm in their personal vehicle. The fact that Radomile's firearm came up during the investigation does not necessitate that his possession of it was the reason that he was terminated. Rather, Pinkerton testified that the firearm was brought up in the context of other employees voicing their concerns about Radomile's threatening and violent behavior towards others. She further testified that there had been reports of Radomile claiming that he was prepared to use the firearm in case "shit went down[.]" While § 527.020 may protect one's right to possess a firearm in his personal vehicle, it does not protect one from his own inappropriate behavior in the workplace.

For a similar reason, the Corrective Action Form listing one of the allegations against Radomile as "[h]aving a gun on property either on his person or in his vehicle" does not defeat summary judgment. (DE 26-6 at 1.) Pinnacle policy is clear that an employee cannot have a firearm on his person, and Pinkerton testified that Radomile may have done just that. Regardless, this allegation cannot be viewed without the context of the other grievances. His coworkers were not concerned about his possession of a firearm, but instead about Radomile's threatening behavior and access to a firearm. Indeed, the conclusion of Pinkerton's report does not include Radomile's possession of a firearm in his personal vehicle as a reason to support his termination. Among other various infractions, Pinkerton focuses on Radomile's "violent rhetoric" and desire to get a "reaction out of people" in conjunction with references to his firearm or concealed carry permit in recommending his termination. (*Id.* at 2.)

Radomile has not produced sufficient evidence that his termination was the result of his possession of a firearm in his personal vehicle. The record shows that Radomile admitted

to numerous infractions and policy violations during his employment, and that his coworkers were concerned about his inappropriate behavior and conduct. Because there is no genuine dispute regarding any material fact and Radomile cannot show that his employment was terminated because of his possession of a firearm in his personal vehicle, Pinnacle is entitled to summary judgment on his wrongful discharge claim.

## III. Conclusion

For the aforementioned reasons, the Court hereby ORDERS as follows:

1)      Pinnacle's Motion to Strike (DE 28) is DENIED;

2)      Pinnacle's Motion for Summary Judgment (DE 24) is GRANTED;

3)      Pinnacle's Motion in Limine (DE 36) is DENIED AS MOOT; and

4)      the Court will enter a Judgment contemporaneously with this Order.

This 9th day of September, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY